**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**

RYAN LISOWSKI,
    Plaintiff,

v.

ABBOTT LABORATORIES,
    Defendant.

Case No.:    26 - cv - 1616

Hon.:

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D.
CONKLIN, PLC
Attorneys for the Plaintiff
4780 Okemos Road, Ste. 2,
Okemos, MI 48823
Phone: (517) 522-2550
Fax: (517) 227-5866
collin@caseydconklin.com

**COMPLAINT and JURY DEMAND**

1

**PARTIES and JURISDICTION**

1.      Plaintiff RYAN LISOWSKI ("Plaintiff") is a United States Citizen and a permanent resident of St. Joseph County, Michigan which is within the geographical bounds of the United States District Court for the Western District of Michigan.

2.      Defendant ABBOTT LABORATIES ("Abbott") is a corporation engaged in the development, manufacture, and sale of nutritional items, medical devices, and medical diagnostic products. It, through its subsidiary Abbott Nutrition, operates a facility at 901 N. Centerville Street in Sturgis, Michigan which is within the County of St. Joseph which is within the Western District of Michigan. Plaintiff was employed by Abbott and assigned to this facility. The events, acts, and omissions giving rise to this Complaint stemmed from Plaintiff's employment at this location.

3.      The Court may exercise general *in personem* jurisdiction over the Defendants because of their permanent presence within the geographical bounds of the Court. In the alternative, the Court may exercise specific jurisdiction over the dispute because the events giving rise thereto occurred within the Court's geographical bounds.

4.      Venue is properly laid in the Western District of Michigan's Southern Division pursuant to 28 USC §§ 1391(b)(1) and (b)(2). Further, as to the Title VII claim, venue is properly laid in the Western District of Michigan pursuant to 42 U.S.C. § 2000e-5(f)(3) because this is a judicial district in the state where the unlawful practice occurred, where the records are maintained, and where Plaintiff worked. A private individual may not vary from Title VII's procedural remediation scheme through private agreement. *Logan v. MGM Grand Detroit Casino,* 939 F.3d 824 (6th Cir. 2019).  Therefore, to the extent that any contractual venue selection clause may conflict, the *statute* will govern the proper venue for this action.

5.      The Court may exercise subject matter jurisdiction over the federal claims pursuant to 28 USC § 1331. The Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 USC § 1367.

**COMMON ALLEGATIONS**

6.      In December of 2017, Plaintiff was hired by Abbott as an "Assistant Chemist I." Mr. Lisowski was involved in the production of baby formula.

7.      For a time, Mr. Lisowski was involved romantically with another Abbott employee named Terri Devlin. The relationship ended in or about March of 2024. After the breakup, Ms. Devlin directed generalized and ongoing harassment towards Mr. Lisowski. For instance, in late summer of 2024 she found out that Mr. Lisowski was interviewing for a CAPA Coordinator position. Ms. Devlin drove to the visitor parking lot, visible from the window for the interview, and gave her current boyfriend an extended kiss in order to distract him. He did not get the position.

8.      On May 7, 2024, there was discussion of promoting Ms. Devlin to Mr. Lisowski's supervisor. Mr. Lisowski spoke to Kaitlyn Cain, Lab Department Manager, and stated that he objected to the obvious conflict of interest that having his ex assigned as his supervisor. Ms. Cain told him that things that happen outside of work are not relevant to the workplace. After Ms. Devlin was promoted to his supervisor he was harassed multiple times. He later advised Kelsey Sobeski, HR Department Manager, of Ms. Devlin's harassing conduct. In spite of this, no known action was taken. Mr. Lisowski was harassed repeatedly and he made complaints to Ms. Sobeski, Ms. Cain and, later, an individual named Eric from Abbott's employee relations and another supervisor after he switched shifts, Payton Krause.

9.      In or about February of 2025, Mr. Lisowski was involved in a written exchange with a coworker, Abeygail Steele, via the Teams messaging app provided to all employees by Abbott

Labs. The conversation was mutually extra-professional and personal in nature and contained many strange comments by both parties. For instance, at one point Abbeygail commented that "[I] try to girly pop the office by making everyone say slay. Outside of the office I hate all people outside of my small human and lovely partner, and wish I finished school before taking this job. I'm regretting my choice of not working with dead people instead they don't try and blow up a 6 story bomb every 5 minutes and I think that sums up my life story pretty gewd lol [*sic*]." At another point she commented "my child is a little shit and lucky I don't WWE her ass on the daily."

10.    Given the personal, familiar-seeming tone of Ms. Steele's comments, Mr. Lisowski responded with similar personal, familiar -seeming comments to her in the course of same. She responded at one point "my not trying to be offense [*sic*] but what the fuck?" Later, she ended the conversation by saying "I think that should be enough in general. I'm not sure what's happening here, but I would prefer all communications stay about work sorry if I had implied anything more." Mr. Lisowski was immediately receptive to her attempt to end the conversation and responded "No, I was a bit rude there. I understand. And for that I am sorry. If you would like something for trying to help me, I will give it to you." And the conversation ended.

11.    On February 17, 2025, at about 6:30 AM, Mr. Lisowski was called to HR to have a meeting with Kaitlyn Cain, Lab Department Manager, and Kelsey Sobreski, HR Department Manager. It was revealed that Abbeygail had reported him for the conversation. Mr. Lisowski was questioned extensively regarding the comments he had made in regard to a video game, and his intent behind them. Meanwhile, Abeygail Steele was not similarly questioned for *her* unprofessional comments, including how "dead people…don't try and blow up a 6 story bomb every 5 minutes," her desire to "WWE" her "little shit" "on the daily," and her use of the word "fuck."

12.     After this February 17 meeting, Mr. Lisowski went to Kelsey Sobeski's office to further clarify his messages. He additionally said that he was concerned that metal may be getting into the baby formula, possibly from stainless steel leeching, and that he had a meeting with Plant Manager, Jeff Rassmussen, on February 18, the next day, he was going to discuss this with him. Later that day, attempting to go to work at his normal time, he attempted to use his security badge to enter the workplace, and he was informed by security that he had been suspended. Mr. Lisowski called Kaitlyn Cain and she told him he was placed on a "2 week suspension." (As noted to follow, Mr. Lisowski was suspended for over one year.) The stated reason was that it was due to an "investigation" into the "inappropriate comments" he had made to Abbeygail during the Teams text and his discussions with HR about his ex-parter, Terri Devlin. Abbeygail was never similarly suspended, investigated, or disciplined at all for her inappropriate comments in this same conversation on Teams.

13.     On February 18, 2025, at about 5:00 AM, Mr. Lisowski contacted MedWatch, the FDA Safety Information and Adverse Event Reporting Program, and indicated that he believed metal was getting into the formula at the plant and he included his name in the report.

14.     On February 19, 2025, Mr. Lisowski was called by a representative from Abbott's employee relations. He relayed everything that had happened.

15.     Mr. Lisowski continued to cooperate with the FDA in their resulting investigation of the metals content of Abbott's baby formula.

16.     On April 6, 2025, Plaintiff initiated EEOC charge number 471-2025-03133 regarding the discrimination and retaliation that he experienced described above. Abbott is well aware of the charge, having filed a position statement related to same on September 18, 2025.

17.    Even after his EEOC charge, Mr. Lisowski continued to language on the disciplinary leave. This ended on February 23, 2026, when Deborah Boskovic, Employee Relations Manager for Abbott Labs, emailed Mr. Lisowski "to communicate the decision to end [his] employment with Abbott." His last day of "suspension" was announced as February 23, 2026. As to the reasons for the termination, Ms. Boskovic stated that "concerns regarding your workplace conduct were investigated, and your continued employment has been under review. It has been determined that your actions did not contribute to a positive work environment and violated Abbott's Anti-Harassment policy." All of this, apparently, referring to the Teams communications with Steele and his meetings with HR on February 17, 2024. He was given no verbal or written warning and was immediately suspended for over one year and then fired after serving Abbott without issue for over 8 years.

18.    On February 24, 2026, Mr. Lisowski requested, and received, a Notice of Right to Sue from the EEOC related to charge number 471-2025-03133.

19.    That same day, he submitted a complaint for violation of the FDA Food and Safety Modernization Act, 21 USC § 399d(a)(1) to the Occupational Health and Safety Administration. This charge remains pending.

20.    On February 26, 2026, Mr. Lisowski, through his counsel, submitted correspondence to Abbott wherein he requested that they provide his employment file pursuant to Michigan's Bullard-Plawecki Employee Right-to-Know Act, MCL §§ 423.503, 423.504. Naomi Greenstone, Senior Counsel from Abbott's legal department, acknowledged receipt of this correspondence from Nyeholt on March 4, 2026. But, to date, Abbott has failed and *refused* to provide Mr. Lisowski's employment file.

21.    Plaintiff has suffered, and continues to suffer, lost wages as a result of Abbott's conduct towards him.

22.    Plaintiff has suffered anger, outrage, and general emotional distress as a result of the knowing and flagrant violation of his rights described herein.

23.    Plaintiff has incurred, and continues to incur, attorney's fees in opposing the ongoing violation of his rights described herein.

## COUNT I – SEX DISCRIMINATION
### *Title VII*

1.    Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

2.    Plaintiff is a "person" and an "employee" as those terms are used in Title VII, 42 USC §§ 2000e(a) and 2000e(f).

3.    Defendant was Plaintiff's "employer" as that term is used by 42 USC § 2000e(b).

4.    Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee based upon his sex.[1] The prohibition on sex-based discrimination is violated when an employer makes adverse decisions against an employee based upon attitudes or stereotypes about their sex.[2] This applies when an employer responding to an allegation of sexual harassment assumes truthfulness to a female accuser over the word of a male, based on assumptions about their sex. The United States Second Circuit Court of Appeals recently considered a claim where a male supervisor was pressured to resign after a female subordinate made allegations of sexual misconduct.[3] Our own federal circuit, the Sixth, has recently upheld multiple claims of gender

---

[1] 42 USC § 2000e

[2] *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)

[3] *Sassaman v. Gamache,* 566 F.3d 307 (2d Cir. 2009).

discrimination when a university arbitrarily accepts a female accuser's allegations of sexual assault over a male's based upon gender stereotyping and similar biases.[4] And, the Western District of Michigan has previously held that a plaintiff states a viable claim, under this precedential framework, that a male who had been subjected to a gender-biased investigation of harassment towards a female could properly maintain a claim for sex-based discrimination.[5]

5.      There is an unfair gender stereotype that males tend to sexually harass females. This can cause friendly, familiar, but otherwise innocuous conversations to be incorrectly viewed as attempts to form sexual or romantic relationships. This unfair and negative gender stereotype obviously influenced both the handling of Abeygail Steele's complaint about Mr. Lisowski and the outcome of same. Plaintiff was immediately subjected to a disciplinary suspension. He was ultimately terminated as a result of "harassment." Meanwhile, because of its anti-male biases, Defendant's managers never even *considered* that Plaintiff could be innocent of any misconduct towards Steele or that she had gotten the wrong idea about his intentions.

6.      Title VII is also violated where the Defendants engage in disparate treatment towards the Plaintiff. This is established where the Plaintiff proves (1) he was a member of a protected class, (2) he suffered an adverse action, (3) he was qualified for his position, and (4) he was treated differently from similarly situated members of the unprotected class. *Chattman v. Toho Tanax America, Inc.*, 686 F.3d 339 (6th Cir. 2012).

7.      Plaintiff, a male, is a member of a protected class because of his sex.

8.      Plaintiff was hired to his position through Abbott's competitive application process. He remained in the position for several years and received no performance-based discipline during his

---

[4] *Doe v. Baum*, 903 F.3d 575, 585-87 (6th Cir. 2018) (adjudicator bias, favoring female testimony but discrediting males, enough to state claim of sexual discrimination.); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018)
[5] *Kammann v. Fraunhoffer USA*, Case No. 21-cv-682 (3/25/22, WD MI 3/25/22)

employment. Plaintiff's termination was not premised upon any performance deficiencies or lack of performance. Rather, it was based upon the results of Abbott's lengthy investigation into the incident with Steele. Plaintiff was therefore qualified for his position.

9.     Plaintiff suffered adverse actions including: (1) disciplinary suspension and (2) termination from employment.

10.     Plaintiff was similarly situated to Abbeygail Steele. Plaintiff engaged in similar conduct to Ms. Steele: making untoward comments in a Teams chat. Plaintiff, a male, was suspended and ultimately *terminated*, supposedly, because he had made these statements. Steele, a female, suffered no discipline *at all* because of the similarly unprofessional statements that she had made *in this same conversation*. Plaintiff, therefore, was treated differently from similarly situated members of the unprotected class.

11.     As a result of the foregoing, Plaintiff has suffered and will continue to suffer

  a.   Lost back and front pay and benefits, both historical and prospective,

  b.   Emotional pain and distress resulting from the mistreatment described herein,

  c.   Attorney's fees in opposing discrimination.

12.     Plaintiff is also entitled to punitive damages, by reason of Defendants' willful and wanton conduct described herein.

## COUNT II – SEX DISCRIMINATION
### Michigan's Elliott-Larsen Civil Rights Act

13.     Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

14.     Michigan's Elliott-Larsen Civil Rights Act (the "ELCRA") provides, in pertinent part, that "an employer shall not … [f]ail or refuse to hire or recruit, discharge, or otherwise discriminate

9

against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … sex . . .”  MCL 37.2202.  The ELCRA is largely coextensive with Title VII, particularly with respect to gender-based discrimination claims. *Barbour v. Department of Social Services,* 198 Mich.App. 183 (1993) (applying Title VII precedent to ELCRA sex discrimination claim.)

15.    For the reasons stated previously, Plaintiff has suffered disparate treatment by reason of his sex. And, he has suffered an unlawful employment decision based upon adverse consideration of gender stereotypes.

16.    Plaintiff has suffered, and will continue to suffer damages including:

   a.   Lost back and front pay and benefits, both historical and prospective,

   b.   Emotional pain and distress resulting from the mistreatment described herein,

   c.   Attorney's fees in opposing discrimination.

17.    Plaintiff is also entitled to an award of exemplary damages, by reason of Defendants' knowing, intentional, and willful violation of his rights under Michigan Law.

### COUNT III –RETALIATION
*Title VII*

18.    Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

19.    Title VII prohibits discrimination by an employer "against any of his employees or applicants for employment" . . . "because such individual, . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [Title VII]." 42 USC § 2000e-3(a).

20.    Plaintiff engaged in activity protected by Title VII when

a.  On May 16, 2024, he complained to the Lab Department Manager, Kaitlyn Cain, about assigned her as his manager.

b.  On February 19, 2025, he discussed the ongoing harassment from Devlin, and unfair and gender-biased treatment in the handling of the Abbegail Steele complaint with Abbott's Employee Relations, and

c.  On April 6, 2026, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

21.  Plaintiff was subjected to unlawful retaliation based, at least in part, upon his protected conduct when he was

a.  Subjected to unwarranted hyper scrutiny of his conduct at work, consisting of the bad-faith charges of "harassment" towards Abbeygail Steele,

b.  Subjected to an ongoing disciplinary suspension starting on February 18, 2025, and

c.  Terminated from his position of employment effected February 23, 2026.

22.  Plaintiff has suffered, and will continue to suffer, the following damages as a result of the Defendants' violation of his rights:

a.  Lost front and back pay and benefits,

b.  Emotional pain and distress,

c.  Attorney's fees in opposing said violations.

23.  Plaintiff is also entitled to punitive damages, by reason of Defendants' willful and wanton violation of Plaintiff's rights.

## COUNT 4 – RETALIATION
### *Michigan's Elliott-Larsen Civil Rights Act*

24.     Plaintiff repeats and re-alleges the factual statements and legal conclusions contained in the previous numbered paragraphs as if fully restated herein.

25.     Michigan's ELCRA prohibits an employer from retaliating or otherwise discriminating against an employee who opposes a violation of the Act or participates in an investigation into violation of the same. The ELCRA is largely coextensive with Title VII, with the exception that the statutes' definition of "employer," unlike its federal counterparts, is broad enough to allow for suit against discriminating managers in their capacity as individuals. *Elezovic v. Ford Motor Company*, 472 Mich. 408 (2005).

26.     Plaintiff engaged in activity protected by the ELCRA when

    a.  On May 16, 2024, he complained to the Lab Department Manager, Kaitlyn Cain, about assigning her as his manager.

    b.  On February 19, 2025, he discussed the ongoing harassment from Devlin, and unfair and gender-biased treatment in the handling of the Abbegail Steele complaint with Abbott's Employee Relations, and

    c.  On April 6, 2026, he filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

27.     Plaintiff was subjected to unlawful retaliation based, at least in part, upon his protected conduct when he was

    a.  Subjected to unwarranted hyper scrutiny of his conduct at work, consisting of the bad-faith charges of "harassment" towards Abbeygail Steele,

    b.  Subjected to an ongoing suspension starting on February 18, 2025, and

    c.  Terminated from his position of employment effected February 23, 2026.

12

28.    Plaintiff has suffered the following damages as a result of the Defendants' violation of his rights:

    a.   Lost front and back pay and benefits,

    b.   Emotional pain and distress,

    c.   Attorney's fees.

29.    Plaintiff is also entitled to exemplary damages because of Defendants' willful and wanton violation of Plaintiff's rights.

### Count V: Violation of Michigan Whistleblowers' Protection Act
**MCL 15.361 *et seq***

24.    Plaintiff repeats and realleges the factual averments and legal assertions in the previous numbered paragraphs as if fully restated herein.

25.    Plaintiff was an *employee* as that term is defined by Michigan's Whistleblower Protection Act, MCL 15.361 (a).

26.    Defendant was Plaintiff's *employer* per MCL 15.361(b).

27.    The Food and Drug Administration (the "FDA") is a *public body* per MCL 15.361(d)(iii).

28.    Michigan's Whistleblowers Protection Act provides that

> **[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action**." MCL 15.361.

29.    On February 17, 2025, Plaintiff told Kelsey Sobeski, HR Department Manager, that he was concerned that metal may be getting into the baby formula, possibly from stainless steel leeching, and that he intended to meet with Plant Manager, Jeff Rassmussen, to discuss this. Abbott therefore knew that Plaintiff was likely about to report a violation to the FDA.

30.    Plaintiff engaged in conduct protected by the WPA when he reported the heavy metal contamination of the baby formula that Abbott was producing to the FDA on February 18, 2025.

31.    In direct response to Plaintiff's protected activities, Abbott placed him on an indefinite suspension on February 18, 2025. And it ultimately terminated his employment effected February 23, 2026.

32.    As delineated previously, Plaintiff has suffered damages as a result of Defendants' actions described herein.


### Count VI: Violation of Michigan's Bullard-Plawecki Employee Right-to-Know Act
### MCL 15.361 *et seq*

33.    Plaintiff repeats and realleges the factual averments and legal assertions in the previous numbered paragraphs as if fully restated herein.

34.    Defendant Abbott is an employer per MCL § 423.501(b).

35.    Plaintiff was Abbott's employee per MCL § 423.501(a).

36.    Abbott was, and is, in possession of certain information and documents that identifies Plaintiff and has used relative to his qualifications for employment, promotion, transfer, additional compensation, or disciplinary action which is referred to as a "personnel record" by the statute at issue. MCL § 423.501(c).

37.    By Michigan law Abbott, "an employer, upon written request which describes the personnel record, shall provide the employee with an opportunity to periodically review at

14

reasonable intervals, generally not more than 2 times in a calendar year or as otherwise provided by law or a collective bargaining agreement, the employee's personnel record." MCL § 423.503.

38.     Further, "[i]f an employee demonstrates that he or she is unable to review his or her personnel record at the employing unit, then the employer, upon that employee's written request, shall mail a copy of the requested record to the employee." MCL § 423.504.

39.     On February 26, 2026, Plaintiff, through his counsel, submitted correspondence to Abbott which stated in pertinent par that

> Michigan's Bullard-Plawecki Employee Right to Know Act, MCL § 423.501 *et seq* permits an employee to review the contents of his personnel record. Due to my client's termination, and the pending legal action related to same, it is unreasonable and inconvenient to expect him to travel to your office personally to review his file as contemplated by MCL § 423.503. At this time, I therefore request on my client's behalf that you provide his complete and unredacted personnel record pursuant to and in conformance with MCL § 423.504. We will, of course, reimburse reasonable costs of the copying pursuant to the statute.

40.     The foregoing communication was sufficient to request inspection of the employee file per MCL § 423.503. It showed good cause why Mr. Lisowski could not investigate it in person, therefore entitling him to receive a copy per MCL § 423.504. He offered to reimburse the reasonable costs of reproduction in accordance with the statute.

41.     Abbott received the foregoing communication.

42.     On March 4, 2026, Naomi Greenstone, Senior Counsel from Abbott's legal department, transmitted correspondence to Lisowski's attorney where she *acknowledged* receipt of the February 26th correspondence.

43.     Abbott has nevertheless failed and refused to provide Mr. Lisowki with his employee file.

44.     Michigan law provides that

> If an employer violates this act, an employee may commence an action in the circuit court to compel compliance with this act. The circuit court for the county in which the complainant resides, the circuit court for the county in which the

15

complainant is employed, or the circuit court for the county in which the personnel record is maintained shall have jurisdiction to issue the order. Failure to comply with an order of the court may be punished as contempt. In addition, the court shall award an employee prevailing in an action pursuant to this act the following damages:

(a) For a violation of this act, actual damages plus costs.

(b) For a willful and knowing violation of this act, $200.00 plus costs, reasonable attorney's fees, and actual damages. MCL § 423.511.

45.    Abbott has violated the statute by (1) failing to provide Mr. Lisowski with access to his employment records in conformance with MCL § 423.503, and (2) failing to transmit a copy of said records to Mr. Lisowski per MCL § 423.504.

46.    Abbott received the February 26th letter where the request was made. The letter specified the statute and laid out Abbott's obligations under same. Abbott's Senior Counsel, Naomi Greenstone *acknowledge receipt* of this correspondence on March 4th. But, Abbott has failed and refused to provide this information. Under the circumstances, its refusal is willful.

47.    Plaintiff is entitled to an award of actual damages, costs, and attorney fees resulting from the failure to provide his employment file. He is also entitled to statutory damages of $200 due to the willful violation of the law.

**WHEREFORE** Plaintiff demands the following relief:

1.  NOMINAL DAMAGES because of the violation of his rights,

2.  COMPENSATORY DAMAGES in an amount determined to be appropriate by the jury,

3.  EXEMPLARY DAMAGES in an amount determined appropriate by the jury,

4.  PUNITIVE DAMAGES in an amount determine appropriate by the jury,

5.  ATTORNEYS FEES and COSTS, pursuant to statute,

6.  STATUTORY DAMAGES of $200 for the willful violation of the Michigan Bullard-Plawecki Employee Right-to-Know Act.

7.  Pre and post judgment interest, and

8.  Such other relief as this Court may deem appropriate in law or equity.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully Submitted,

Dated: 5/18/2026

_/s/ Collin H. Nyeholt_
Collin H. Nyeholt (P74132)
Attorney for the Plaintiff

## VERIFICATION OF COMPLAINT

Mr. Ryan Lisowski, being sworn, says:

I verify, under penalty of perjury, that I have read and made this Complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

/s/_____

Ryan Lisowski

**Notary Seal**

Subscribed and sworn to by _Ryan Lisowski_
before me the ___14th___ day of ___May___, 2026.
Signature_____
Printed Name_ Breanna Rodriguez_
Notary Public in: _Kalamazoo, Michigan_
My Commission Expires_May 5th, 2031_

State of: _Michigan_
County of: _Kalamazoo_
The foregoing instrument was acknowledged
before me _14th_ day of _May_, 2026
_Breanna Rodriguez_
Your Name Here, Notary Public
My Commission Expires _May 5th, 2031_

18